UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUSANNA MARIE MIRANDA,<br>Plaintiff<br>v.<br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br>Defendant. | Case No. 2:18-cv-00001-GJS<br><br>**MEMORANDUM OPINION AND ORDER** |

## I. PROCEDURAL HISTORY

Plaintiff Susanna Marie Miranda ("Plaintiff") filed a complaint seeking review of Defendant Commissioner of Social Security's ("Commissioner") denial of her application for Disability Insurance Benefits ("DIB"). The parties filed consents to proceed before the undersigned United States Magistrate Judge [Dkts. 11, 19] and briefs addressing disputed issues in the case [Dkt. 16 ("Pltf.'s Br."), Dkt. 17 ("Def.'s Br."), and Dkt. 18 ("Pltf.'s Reply").] The Court has taken the parties' briefing under submission without oral argument. For the reasons discussed below, the Court finds that this matter should be remanded for additional proceedings.

## II. ADMINISTRATIVE DECISION UNDER REVIEW

On January 31, 2013, Plaintiff filed an application for DIB, alleging that she became disabled as of December 31, 2011. [Dkt. 13, Administrative Record ("AR") 21, 177-78.] The Commissioner denied her initial claim for benefits on May 28, 2013, and upon reconsideration on March 4, 2014. [AR 21; 71-100.] On November 19, 2015, a hearing was held before Administrative Law Judge ("ALJ") Roger E. Winkelman. [AR 32-56.] A second hearing was held on July 7, 2016. [AR 57-70.] On July 29, 2016, the ALJ issued a decision denying Plaintiff's request for benefits. [AR 17-31.] Plaintiff requested review from the Appeals Council, which denied review on November 1, 2017. [AR 1-6.]

Applying the five-step sequential evaluation process, the ALJ found that Plaintiff was not disabled. *See* 20 C.F.R. §§ 404.1520(b)-(g)(1).[1] At step one, the ALJ concluded that Plaintiff has not engaged in substantial gainful activity since her alleged onset date of December 31, 2011 through her date last insured of December 31, 2015 [AR 22 (citing 20 C.F.R. § 404.1571).] At step two, the ALJ found that Plaintiff suffered from the following severe impairments: unspecified connective tissue disorder;[2] multilevel disc disease; thoracolumbar spine; seizure disorder;

---

[1] To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows: (1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two; (2) Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three; (3) Does the claimant's impairment meet or equal the requirements of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four; (4) Is the claimant capable of performing her past work? If so, the claimant is found not disabled. If not, proceed to step five; (5) Is the claimant able to do any other work? If not, the claimant is found disabled. If so, the claimant is found not disabled. 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1).

[2] Plaintiff correctly notes that the ALJ opinion names Plaintiff's impairment as "unspecified connective tissue disorder" when Plaintiff had been diagnosed with "undifferentiated connective tissue disease." [Pltf.'s Br. at 4; AR 22, 78, 94, 451, 517.]

obesity; and migraines. [*Id.* (citing 20 C.F.R. § 404.1520(c)).] Next, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. [AR 24 (citing 20 C.F.R. Part 404, Subpart P, Appendix 1; 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526).]

The ALJ found that Plaintiff had the following residual functional capacity (RFC):

> [Plaintiff] had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except: frequently fine and gross manipulation; never ropes, ladders, scaffolds; all postural limitation occasionally; avoid concentrated to extreme cold, heat, vibration, fumes, odors, gases; avoid even moderate exposure to hazards.

[AR 24.] Applying this RFC, the ALJ found that Plaintiff was unable to perform her past relevant work, but determined that based on her age (47 years old at the date last insured), high school education, and ability to communicate in English, she could perform representative occupations such as cashier II (DOT 211.462-010), marker (DOT 209.587-034), and sales attendant (DOT 299.677-010), and, thus, is not disabled. [AR 26-27 (citing 20 CFR 404.1569 and 404.1569(a)).]

### III. GOVERNING STANDARD

Under 42 U.S.C. § 405(g), this Court reverses only if the Commissioner's "decision was not supported by substantial evidence in the record as a whole or if the [Commissioner] applied the wrong legal standard." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). Even if Plaintiff shows the Commissioner committed legal error, "[r]eversal on account of error is not automatic, but requires a determination of prejudice." *Ludwig v. Astrue,* 681 F.3d 1047, 1054 (9th Cir. 2012). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Molina,* 674 F.3d at 1111 (citing *Shinseki v. Sanders,* 556 U.S. 396, 409 (2009)). And "[w]here harmfulness of the error is not apparent from the circumstances, the party seeking reversal must explain how the

error caused harm." *McLeod v. Astrue,* 640 F.3d 881, 887 (9th Cir. 2011). Courts have "affirmed under the rubric of harmless error where the mistake was nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion." *Stout v. Comm'r, Soc. Sec. Admin.,* 454 F.3d 1050, 1055 (9th Cir. 2006). In sum, "ALJ errors in social security cases are harmless if they are 'inconsequential to the ultimate nondisability determination' and … 'a reviewing court cannot consider [an] error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.'" *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. July 10, 2015) (quoting *Stout*, 454 F.3d at 1055-56). Ultimately, "[t]he nature of [the] application [of the harmless error doctrine] is fact-intensive—'no presumptions operate' and '[the Court] must analyze harmlessness in light of the circumstances of the case.'" *Id.* (quoting *Molina,* 674 F.3d at 1121).

## IV. DISCUSSION

Plaintiff contends that the ALJ failed to evaluate properly the medical opinions of three non-examining agency physicians: Dr. M. Ormsby, M.D., a state agency review physician; Dr. Ocrant, M.D., a state agency review physician at the administrative reconsideration level; and Dr. Jahnke, M.D., a medical expert. [Pltf.'s Br. at 4-5; Pltf.'s Reply at 3; *see* AR 22-27, 71-84, 86-99, 517-25.] In particular, Plaintiff challenges the determination that she can perform work at the light level given that the three nonexamining physicians each found she could not stand or walk for the time required for light work. For the reasons stated below, the Court reverses the decision of the Commissioner and remands this matter for further proceedings.

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine, but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant

4

(non-examining physicians). *See* 20 C.F.R. §§ 404.1502, 404.1527; *see also Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). An ALJ is obligated to take into account all medical opinions of record, resolve conflicts in medical testimony, and analyze evidence. 20 C.F.R. § 404.1527(c); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).

In conducting this analysis, the opinion of a treating or examining physician is entitled to greater weight than that of a non-examining physician. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). Although ALJs "are not bound by any findings made by [non-examining] State agency medical or psychological consultants, or other program physicians or psychologists," ALJs must still "consider findings and other opinions of State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists as opinion evidence, except for the ultimate determination about whether [a claimant is] disabled" because such specialists are regarded as "highly qualified . . . experts in Social Security disability evaluation." 20 C.F.R. §§ 404.1527(e)(2)(i) (2016). "Unless a treating source's opinion is given controlling weight, the [ALJ] must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician, psychologist, or other medical specialist." 20 C.F.R. §§ 404.1527(e)(2)(ii) (2016); *see also* SSR 96-6p ("Findings . . . made by State agency medical and psychological consultants and other program physicians and psychologists regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of nonexamining sources," and ALJs "may not ignore these opinions and must explain the weight given to these opinions in their decisions.").

### A. The ALJ Failed to Explain the Weight Given the Opinions of Non-Examining Physicians Dr. Ormsby and Dr. Ocrant

Four physicians each issued contradicting opinions on how long Plaintiff can stand or walk in an eight-hour workday. Dr. Ormsby and Dr. Ocrant were each

agency review physicians, Dr. Jahnke was a medical expert who reviewed Plaintiff's medical records, and Dr. Afra, M.D., the only doctor who issued an opinion that Plaintiff can stand for up to six hours in a workday, was a consultative examiner. [AR 71, 77-78, 91, 94, 451, 521.]

On May 28, 2013, Dr. Ormsby, issued a Disability Determination Explanation at the initial level, and on February 21, 2014, Dr. Ocrant issued a Disability Determination Explanation at the reconsideration level recommending the initial RFC be confirmed. [AR 71, 91.] Dr. Ormsby and Dr. Ocrant each issued RFCs for two periods, the current evaluation and December 31, 2011 to April 19, 2012. [AR 77-81, 94-96.] For the current evaluation, both Dr. Ormsby and Dr. Ocrant listed that Plaintiff was limited to standing or walking for a total of four hours in an eight-hour workday with additional postural and environmental limitations. [AR 77-79, 94-96.] For the period of December 31, 2011 to April 19, 2012, both Dr. Ormsby and Dr. Ocrant listed that Plaintiff was limited to standing or walking for a total of six hours in an eight-hour workday with additional postural limitations, but no additional environmental limitations. [AR 79-80, 96-97.] Both doctors opined that Plaintiff was not disabled. [AR 84, 99.]

Dr. Afra completed an internal medicine evaluation of Plaintiff on January 14, 2014. [AR 445.] Dr. Afra assessed Plaintiff as being able to stand or walk for up to six hours out of an eight-hour day. [AR 451.]

On January 19, 2016, Dr. Jahnke responded to a request for medical interrogatory. [AR 504-16, 517-25.] After reviewing the evidence, Dr. Jahnke determined that Plaintiff was able to stand or walk for up to two hours in an eight-hour workday, for no more than thirty minutes at one time without interruption. [AR 517, 521.]

The ALJ did not cite to the opinion of a treating physician on the issue of how many hours per day Plaintiff can stand or walk, nor does the record reflect that a treating physician made such a determination. The ALJ was therefore required to

6

discuss the weight given to the agency review physicians' opinions. It is undisputed that the ALJ does not name either Dr. Ormsby or Dr. Ocrant or specifically identify their opinions. [*See* Def.'s Br. at 2.] Defendant's argument that the ALJ "acknowledged and considered" the opinions is unconvincing and would, in any case, not fulfill the ALJ's requirement to explain the weight given to each opinion. Defendant seems to rely on the ALJ's statement that he "considered the opinions of the State Agency medical consultants who evaluated this issue at the initial and reconsideration levels of the administrative review process." [Def.'s Br. at 2, AR 24.] The ALJ, however, included this description in discussing his determination that the Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. [AR 24.]

When discussing the RFC finding, the ALJ stated that he credited Dr. Afra's opinion over Dr. Jahnke's opinion for two reasons: 1) "the consistency with the grossly normal physical examinations by the claimant's treating physicians," and 2) that Dr. Afra actually examined Plaintiff. [AR 25.] The ALJ did not specify which physical examinations in the medical record were "grossly normal,"[3] nor did he cite to any specific information in Dr. Afra's opinion to demonstrate how Dr. Afra's opinion is consistent with the treating doctor's physical examinations. In describing his RFC determination, the ALJ cited to Plaintiff's statements of her daily activities contained in the medical record. [AR 25.] The ALJ did not cite to either Dr. Ormsby's or Dr. Ocrant's opinions when discussing his findings as to Plaintiff's RFC. [*See* AR 24-26.] The ALJ did correctly note that "the record does not contain any opinions from treating physicians indicating that the claimant is disabled or even has limitations greater than those determined in this decision." [AR 25.]

---

[3] The ALJ does, in a previous section of his decision determining Plaintiff's impairments, use the phrase "grossly normal" to characterize a May 14, 2014 physical examination of Plaintiff conducted by Dr. Richardson, one of Plaintiff's treating physicians. [AR 23.]

7

Because the ALJ did not rely on a treating physician's opinion as to Plaintiff's ability to stand for more than four hours in an eight-hour workday, he was required to discuss the weight given to the non-examining physician opinions in his decision. The failure to address the weight given to Dr. Ormsby and Dr. Ocrant's opinions was error. *See* SSR 96-6p; *see also Van Sickle v. Astrue*, 385 Fed. App'x 739, 741 (9th Cir. 2010) (finding ALJ erred by failing to mention state agency psychologist's opinions that claimant had "moderate mental limitations" and could only work in a "low stress setting").

### B. Defendant's Arguments that Any Error Was Harmless are Not Supported by the Record

Defendant first argues that Plaintiff is not entitled to relief, because Dr. Ormsby and Dr. Ocrant both determined that Plaintiff is not disabled. [Def.'s Br. at 2.] This argument is unavailing. A physician's opinion on the ultimate issue of disability is not entitled to "any special significance," because statements "by a medical source that [a claimant] is 'disabled' or 'unable to work'" "are not medical opinions." 20 C.F.R. §§ 404.1527(d)-(d)(3). Therefore, the ALJ was not required to consider the physicians' determination as to whether Plaintiff was disabled, because this issue is reserved for the Commissioner.

Defendant also argues that even if Plaintiff's RFC limited her to sedentary work, then she would not be disabled. [Def.'s Br. at 1.] This argument is not supported by the record. During the hearing, the ALJ presented the Vocational Expert ("VE") with two hypotheticals. [AR 66, 68-69.] In the first, the ALJ asked whether there are jobs at the light work level[4] with additional specific postural and environmental limitations. [AR 66.] In the second, the ALJ asked whether there are jobs with the restrictions Dr. Jahnke identified, which included in relevant part a two-hour limit to standing or walking in a workday and additional postural and

---

[4] Light work involves "standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10.

environmental limitations. [AR 68-69.] The ALJ did not ask any hypothetical situation in which the Plaintiff could, as Dr. Ormsby and Dr. Ocrant listed, stand or walk for four hours of an eight-hour workday. [*See* AR 66-68.] The VE identified three jobs in response to the first hypothetical and said there were no jobs in response to the combination of limitations Dr. Jahnke listed. [AR 66-69.] The vocational expert did not address any hypothetical in which Plaintiff was limited to standing and walking four hours with additional postural and environmental limitations. [*See* AR 66-69.] The Court cannot "confidently conclude" that no reasonable ALJ, when fully crediting Dr. Ormsby and Dr. Ocrant's opinions, "could have reached a different disability determination." *See Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) (quoting *Stout*, 454 F.3d at 1055-56).

## V.  CONCLUSION

Where "an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency." *Treichler v. Comm'r of Social Security Admin.*, 775 F.3d 1090, 1105 (9th Cir. 2014). The Court has the discretion to credit as true improperly rejected evidence and remand for payment of benefits where the following three factors are satisfied:  (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *See Garrison*, 759 F.3d at 1020; *see also Treichler*, 775 F.3d at 1100-01. But even where all three factors of this "credit-as-true" rule are met, the Court retains discretion to remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Garrison*, 759 F.3d at 1021; *see also Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) ("The touchstone for an award of benefits is the existence of a disability, not the agency's

legal error.").

Here, the ALJ's assessment of Plaintiff's RFC did not reflect adequate consideration of Dr. Ormsby and Dr. Ocrant's opinions. Because questions regarding Plaintiff's RFC remain unresolved, the record has not been fully developed and remand for further proceedings is appropriate. *See Garrison*, 759 F.3d at 1020; *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2016) (remand for further proceedings is appropriate when the record is not "fully developed"). On remand, the ALJ should reassess Dr. Ormsby and Dr. Ocrant's opinions with respect to Plaintiff's RFC. The ALJ must explain the weight afforded to each medical opinion and provide legally adequate reasons for rejecting or discounting it. Because this matter is being remanded for reassessment of Plaintiff's RFC and related medical opinion evidence, the Court does not reach the remaining issue raised by Plaintiff, *i.e.*, regarding the weight afforded to Dr. Jahnke's opinion, except as to determine that reversal with the directive for immediate payment of benefits for the period after the alleged medical improvement date would not be appropriate at this time. However, the ALJ should address Plaintiff's additional contention of error when evaluating the evidence on remand.

Accordingly, **IT IS ORDERED** that:

(1) the decision of the Commissioner is REVERSED and this matter REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Memorandum Opinion and Order; and

(2) Judgment be entered in favor of Plaintiff.

**IT IS SO ORDERED.**

DATED: October 18, 2018

_____
GAIL J. STANDISH
UNITED STATES MAGISTRATE JUDGE

10